UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/11/2015
```

FRANCK LE BOUTEILLER,

                              Plaintiff,

          - against -

THE BANK OF NEW YORK MELLON
FKA THE BANK OF NEW YORK AS
TRUSTEE FOR CWALT, INC.,
ALTERNATIVE LOAN TRUST 2007-16CB,
MORTGAGE PASSTHROUGH
CERTIFICATES, SERIES 2007-16CB;
CWALT, INC., ALTERNATIVE LOAN
TRUST 2007-16CB, MORTGAGE
PASSTHROUGH CERTIFICATES, SERIES
2007-16CB; THE CERTIFICATEHOLDERS
OF CWALT, INC., ALTERNATIVE LOAN
TRUST 2007-16CB, MORTGAGE
PASSTHROUGH CERTIFICATES, SERIES
2007-16CB; RECONTRUST COMPANY
N.A.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; ROES
1-10 AND DOES 1-10,

                              Defendants.

**MEMORANDUM
OPINION & ORDER**

14 Civ. 6013 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          Pro se Plaintiff Franck Le Bouteiller filed the Complaint in this action on August
1, 2014. (Dkt. No. 2)  On November 4, 2014, Plaintiff filed an Amended Complaint.  (Dkt. No.
16)  Plaintiff's claims arise out of a mortgage loan that he executed on May 26, 2007, and that
was purportedly assigned to Defendant Bank of New York Mellon on August 15, 2011.  See Am.
Cmplt. (Dkt. No. 16) ¶¶ 14, 52; id. Ex. 2.  Plaintiff alleges that the assignment of his mortgage
loan was invalid; that Bank of New York Mellon and the other Defendants hold no interest in his

mortgage loan; and that the Defendants have, inter alia, committed fraud and violated the New York and Nevada business codes, the Fair Debt Collection Practices Act, and the Truth in Lending Act.

On December 12, 2014, Defendants filed a motion to dismiss the Amended Complaint. (Dkt. No. 28)  For the reasons stated below, Defendants' motion will be granted.

## BACKGROUND[1]

On May 26, 2007, Plaintiff Franck Le Bouteiller executed a promissory note (the "Note") in favor of Countrywide KB Home Loans in the amount of $283,392.80, plus interest. See Am. Cmplt. (Dkt. No. 16) Ex. 1.  To secure his obligations under the Note, Plaintiff executed on the same day a Deed of Trust on behalf of Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Countrywide, encumbering certain real property located at 17 Desert Palm Drive, Las Vegas, Nevada (the "Mortgaged Premises").  (Id.)  The Deed of Trust states that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to [Plaintiff]."  (Id. ¶ 20)  The Deed of Trust also states that the "covenants and agreements of this Security Instrument shall

---

[1] The following facts are drawn from the Amended Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).  "In assessing the legal sufficiency of [a plaintiff's] claim[s] [on a motion to dismiss,]" the court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and 'documents upon which the complaint "relies heavily."'"  Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y., 678 F.3d 184, 187 (2d Cir. 2012) (quoting In re Citigroup ERISA Litig., 662 F.3d 128, 135 (2d Cir. 2011) (quoting DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010))).  The Court has also taken judicial notice of certain public filings in the United States District Court for the District of Nevada.  See Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006) ("'[In deciding a motion to dismiss,] [a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

bind . . . and benefit the successors and assigns of the Lender." (Id. ¶ 13)

        The Note and Deed of Trust were later sold and assigned to Defendant Bank of New York Mellon (the "Bank"), in its capacity as Trustee for the Certificateholders of the CWALT, Inc. Alternative Loan Trust 2007-16CB Mortgage Pass-Through Certificates Series 2007-16CB (the "Trust").[2] (Id. Ex. 2 (Corporation Assignment Deed of Trust)) The assignment was recorded in the Clark County, Nevada recorder's office on August 15, 2011 (id.), and Plaintiff alleges that the assignment to the Bank occurred that same day. (Id. ¶ 52)

        The Trust is organized under New York law (id. ¶¶ 26, 74), and is a Real Estate Mortgage Investment Conduit ("REMIC"). (Id. ¶ 74) The Trust holds the notes to a number of mortgages, which have been securitized. (Id. ¶¶ 73-74) The Trust has issued bonds to its investors, known as Certificateholders. As borrowers make principal and interest payments on their mortgages, the Certificateholders are entitled to payments under the governing documents of the Trust. See id. Plaintiff's mortgage loan is one of those held by the Trust. See id. ¶¶ 14, 48.

        At some point after the assignment, the Bank, acting as Trustee for the Trust, executed a Notice of Default with respect to Plaintiff's mortgage loan and commenced foreclosure proceedings. See id. ¶¶ 71, 287. Plaintiff "does not dispute that he owes money on his loan obligation" (id. ¶ 100), and he admits that as of August 15, 2011 – when the Corporation Assignment Deed of Trust was recorded (see id. Ex. 2) – his mortgage was in default. See id.

---

[2] Plaintiff has also named the Trust and its Certificateholders as defendants in this action. (Am. Cmplt. (Dkt. No. 16)) In its capacity as Trustee, the Bank's motion to dismiss is made on behalf of itself, the Trust, and its Certificateholders. (Def. Br. (Dkt. No. 30) at 1 n.1; see Anh Nguyet Tran v. Bank of New York, No. 13 Civ. 580 (RPP), 2014 WL 1225575, at *1 n.4 (S.D.N.Y. Mar. 24, 2014) (permitting "Trustee Defendants [to] argue on behalf of the Trust Defendants because, under New York law, a trust is not a person that can sue or be sued, and litigation involving a trust must be brought by or against the trustee in its capacity as such").

¶ 119.  Plaintiff claims, however, that the assignment of the Note and Deed of Trust to the Bank was invalid and that, as a result, the Bank and the other Defendants hold no interest in the Mortgaged Premises and have violated the law in seeking payment on the mortgage and foreclosure on the Mortgaged Premises.  See id. ¶¶ 14, 72.

Plaintiff seeks a declaratory judgment that the assignment of the Note and Deed of Trust was invalid because the assignment violates (1) the terms of the Trust's governing documents; (2) New York trust law; and (3) certain provisions of the Internal Revenue Code. See id. ¶¶ 107-189.  Because of the allegedly invalid assignment of the Note and Deed of Trust, Plaintiff contends that Defendants (1) have no authority to assert any rights against the Mortgaged Premises (id. ¶ 197); (2) have committed fraud (id. ¶¶ 201-205); (3) have violated New York's Deceptive Practices Act, N.Y. Gen Bus. Law § 349 (id. ¶¶ 206-214); (4) have violated the Nevada Business and Professional Code (id. ¶¶ 215-243); and (5) have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e.  (Id. ¶¶ 244-260).  Plaintiff further contends that the Bank's foreclosure action concerning the Mortgaged Premises is statutorily defective.  (Id. ¶¶ 281-310)  Finally, Plaintiff asserts that Defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g), by not giving him notice within the required time of the purported assignment of the Note and Deed of Trust.  See id. ¶¶ 261-280; id. ¶ 270 (even assuming that the Note and Deed of Trust were validly assigned, the Bank "was still required to follow the provisions of TILA as the purported new creditor").

The Complaint was filed on August 1, 2014 (Dkt. No. 1), and Defendants moved to dismiss on October 10, 2014.  (Dkt. No. 9)  The Amended Complaint was filed on November 4, 2014 (Dkt. No. 16), and Defendants moved to dismiss the Amended Complaint on December 12, 2014.  (Dkt. No. 28)  Defendants argue, inter alia, that (1) Plaintiff lacks standing to assert

that the assignment is invalid under the terms of the Trust's governing documents, the Internal

Revenue Code, and New York trust law (Def. Br. (Dkt. No. 30) at 15-20); (2) Plaintiff has not

pled his fraud claims with sufficient particularity (id. at 22); and (3) Plaintiff's remaining claims

fail as a matter of law.[3]

      Plaintiff's opposition to Defendants' motion to dismiss was due on December 29,

2014.  (Dkt. No. 26)  Because Plaintiff filed no opposition, on April 3, 2015, this Court issued an

order deeming Defendants' motion unopposed.  (Dkt. No. 35)

## DISCUSSION

## I.    LEGAL STANDARD ON MOTION TO DISMISS

      "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

These factual allegations must be "sufficient 'to raise a right to relief above the speculative

level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting

Twombly, 550 U.S. at 555).  "In considering a motion to dismiss . . . the court is to accept as true

all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d

Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87

---

[3] Defendants also argue (see Def. Br. (Dkt. No. 30) at 8) that Plaintiff's claims are barred by res judicata and collateral estoppel, based on a 2009 action that Le Bouteiller filed in Nevada.  See Le Bouteiller v. Countrywide KB Homes, No. 9 Civ. 1621 (KJD) (LRL).  That action was dismissed with prejudice on November 23, 2010.  Le Bouteiller, No. 9 Civ. 1621 (Dkt. No. 35 (order granting motion to dismiss), Dkt. No. 36 (judgment)).  All of the claims in the instant action arise out of the assignment of the Note and Deed of Trust to the Bank, however, which Plaintiff alleges occurred in August 2011.  See Am. Cmplt. (Dkt. No. 16) ¶ 52.  Because the claims in the instant case were not, and could not have been, asserted in the Nevada action, they are not barred by res judicata or collateral estoppel.  See Epperson v. Entm't Express, Inc., 242 F.3d 100, 108-09 (2d Cir. 2001) (claims barred only if they were actually asserted or could have been asserted in the original action).

(2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing

Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

  A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of

'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and

does not provide factual allegations sufficient "to give the defendant fair notice of what the claim

is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507

F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

  "When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6)

purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to

documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of

which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which

plaintiff[] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987

F.2d 142, 150 (2d Cir. 1993) (citation omitted).

  "A pro se litigant's submissions are held to 'less stringent standards than [those]

drafted by lawyers.'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at

*4 (S.D.N.Y. Mar. 18, 2010) (alterations in original) (quoting Haines v. Kerner, 404 U.S. 519,

520 (1972)).  Where a "plaintiff is proceeding pro se, the Court construes the complaint liberally,

'interpret[ing] it to raise the strongest arguments that it suggests.'" Braxton v. Nichols, No. 08

Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) (internal citations

omitted) (quoting Harris v. Westchester Cnty. Dep't of Corr., No. 06 Civ. 2011 (RJS), 2008 WL

953616, at *2 (S.D.N.Y. Apr. 3, 2008)).  However, "the court need not accept as true

'conclusions of law or unwarranted deductions of fact.'" Whitfield, 2010 WL 1010060, at *4

(quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)); see

also <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].").

## II.   ANALYSIS

### A.   Plaintiff Lacks Standing to Challenge the Assignment Based on the Alleged Violation of the Trust's Governing Documents and New York Trust Law

In his Ninth, Tenth, Eleventh, Twelfth, and Thirteenth Causes of Action, Plaintiff seeks a declaratory judgment that the assignment of his mortgage to the Bank is invalid because it violates the governing documents of the Trust and New York trust law. See Am. Cmplt. (Dkt. No. 16) ¶¶ 169-189. In <u>Rajamin v. Deutsche Bank Nat. Trust Co.</u>, 757 F.3d 79 (2d Cir. 2014), however, the Second Circuit upheld the dismissal of nearly identical claims, finding that "plaintiffs [had] established neither constitutional nor prudential standing to pursue the[ir] claims" that the assignments of their mortgages were invalid because they violated (1) the governing documents of the mortgage trust into which they were placed, and (2) New York trust law. <u>Id.</u> at 85. Based on <u>Rajamin</u>, this Court concludes that Plaintiff lacks standing to challenge the assignment of his mortgage.

#### 1.   Constitutional Standing

"'The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." <u>Id.</u> at 84 (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975)) (brackets omitted).

> In <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992), the Supreme Court articulated three separate requirements for constitutional standing. First, the plaintiff must have suffered an "injury in fact," – that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." <u>Id.</u> at 560 (internal citations, quotation marks, and footnote omitted). Second, "there must be a causal connection between the injury and the conduct" of which the plaintiff complains.

Id. And third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (internal quotation marks omitted).

E.M. v. New York City Dep't of Educ., 758 F.3d 442, 449-50 (2d Cir. 2014).

Here, Plaintiff claims that he has been injured as a result of Defendants' demand for payment and initiation of foreclosure proceedings. See Am. Cmplt. (Dkt. No. 16) ¶¶ 197-198, 287. Plaintiff also claims that Defendants have impaired his ability to (1) "negotiate a loan modification with the true and correct beneficiary of [his] loan"; (2) "negotiate a short sale with the true and correct beneficiary of [his] loan"; (3) "obtain new financing"; and (4) "provide a clear and correct title to a potential buyer of [his] home." (Id. ¶ 60) Finally, Plaintiff claims that – because Defendants are "not the true and correct beneficiar[ies] of Plaintiff's loan" – the assignment has "expos[ed] him to [potential] multiple judgments and/or demands for payment on [his] loan." (Id.)

In Rajamin, plaintiffs likewise claimed that they had been injured by defendants' demands for payment on their mortgage loans and by their initiation of foreclosure proceedings, given that defendants allegedly "ha[d] not obtained ownership over and d[id] not own plaintiffs' promissory notes and deeds of trust and [therefore] had no right to collect and receive payment on the mortgage loans and no right to foreclose on plaintiffs' real property." Rajamin, 757 F.3d at 83 (internal quotation marks, alterations, and citations omitted). The Rajamin plaintiffs likewise claimed that defendants had exposed them to the possibility of multiple payment demands or foreclosure proceedings. See id. at 85. The court rejected each of these asserted injuries as too speculative and hypothetical to establish constitutional standing. Id. at 85-86.

Here, as in Rajamin, none of the injuries alleged by Plaintiff is sufficient to establish Plaintiff's constitutional standing:

8

> [P]laintiff[] acknowledge[s] that [he] took out the loan[] [at issue] and [is]
> obligated to repay [it], with interest; and [he] ha[s] not pleaded or otherwise
> suggested that [he] ever paid defendants more than the amounts due, or . . .
> received a bill or demand from any entity other than defendants.  Thus, there is no
> allegation that plaintiff[] ha[s] paid more than [he] owed or [that he has] been
> asked to do so.

Rajamin, 757 F.3d at 85; see Am. Cmplt. (Dkt. No. 16) ¶ 100 (Plaintiff "does not dispute that he

owes money on his loan obligation.").

> Further, plaintiff['s] challenge to defendants' claim of ownership of plaintiff['s]
> loan[], implying that the loan[] [is] owned by some other entity or entities, is
> highly implausible, for that would mean that since [2011, when Plaintiff claims
> ownership of the loan became clouded,] there was no billing or other collection
> effort by [any other putative] owner[] of [his] loan[] . . . .

Rajamin, 757 F.3d at 85.  As in Rajamin, Plaintiff has not alleged that he has received demands

for payment from anyone other than Defendants.  Accordingly, "[t]he suggestion that plaintiff[]

[is] in imminent danger – or, indeed, any danger – of having to make duplicate loan payments is

. . . entirely hypothetical."  Id.

> For the same reason, the [Amended] Complaint's assertion that ["Defendants
> have commenced foreclosure of Plaintiff's property" (Am. Cmplt. (Dkt. No. 16) ¶
> 287)] does not indicate an actual or imminent, rather than a conjectural or
> hypothetical, injury.  Plaintiff[] ha[s] acknowledged . . . that [he] w[as] declared
> in default on [his] mortgage[], and that foreclosure proceedings were instituted by
> [Defendants.  See id. ¶¶ 71, 287.]  Just as there was no allegation in the
> [Amended] Complaint that any entity other than defendants had demanded
> payments, there was no allegation of any threat or institution of foreclosure
> proceedings against . . . plaintiff by any entity other than defendants.
>
> . . . .
>
> [Accordingly], plaintiff[] [has] failed to allege injuries sufficient to show
> constitutional standing to pursue [his] claims.

Id. at 85-86.

        In sum, Plaintiff's claim that he is not certain who owns the Note and Deed of

Trust, and that this uncertainty has caused him a variety of injuries, is belied by the fact that no

9

entity other than Defendants has asserted any claim of ownership over his loan.  The Amended

Complaint is devoid of any such allegation.  Moreover, given that Plaintiff acknowledges that he

"owes money on his loan obligation" (Am. Cmplt. (Dkt. No. 16) ¶ 100), and that, as of August

15, 2011, his "loan [was] in default" (id. ¶ 119) – such that the initiation of foreclosure

proceedings by the rightful owner of his Note and Deed of Trust would be proper – he has

suffered no injury from Defendants' payment demands or their commencement of foreclosure

proceedings.  See Rajamin, 757 F.3d at 85-86; see also Obal v. Deutsche Bank Nat'l Trust Co.,

No. 14 Civ. 2463 (RWS), 2015 WL 631404, at *3 (S.D.N.Y. Feb. 13, 2015) (finding no

constitutional standing under Rajamin where borrower challenged validity of assignment of

mortgage loan on nearly identical grounds to those asserted by Plaintiff here; plaintiff "d[id] not

allege that [he] ha[d] been confronted with conflicting payment obligations, nor that he ha[d]

paid more than he owed or was asked to do so"; under these circumstances, plaintiff's claims

that (1) "another entity may be the true owner of the loan, exposing him to multiple judgments

and/or demands for payment," (2) "Defendants may commence a foreclosure proceeding against

him," and (3) "that uncertainty regarding the true owner of the Note and Mortgage ha[d]

prejudiced his ability to negotiate a loan modification or short sale, and to convey clear and

correct title on the property to a potential buyer," did not establish constitutional standing

(internal citations and quotation marks omitted)).

        Because Plaintiff's allegations do not demonstrate that he has suffered an "injury

in fact," see Lujan, 504 U.S. at 560, he has not established constitutional standing.

### 2.   **Prudential Standing**

        "Even if plaintiff[] had Article III standing [with respect to Causes of Action 9-

13]," this Court "conclude[s] that [he] lacks prudential standing" to challenge the validity of the

Assignment based on the alleged violation of the Trust's governing documents or New York trust law. Rajamin, 757 F.3d at 86. "The 'prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" Id. (quoting Warth, 422 U.S. at 509) (alterations in original). Accordingly, a "'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Id. (quoting Warth, 422 U.S. at 499).

> The principles that any contractual provision "may be waived by implication or express intention of the party for whose benefit the provision inures," Wolff & Munier, Inc. v. Whiting-Turner Contracting Co., 946 F.2d 1003, 1009 (2d Cir. 1991) (internal quotation marks omitted), and that strangers may not assert the rights of those who "do not wish to assert them," Singleton v. Wulff, 428 U.S. 106, 113-14 (1976) (plurality opinion), underlie the rule adhered to in New York – whose law governs the [Trust and its governing documents] – that the terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract[.] [S]ee, e.g., Mendel v. Henry Phipps Plaza West Inc., 6 N.Y.3d 783, 786 (2006) . . . .

> This rule has been applied to preclude claims where mortgagors have sought relief from their loan obligations on grounds such as those asserted here. See, e.g., Cimerring v. Merrill Lynch Mortgage Investors, Inc., No. 8727/2011, 2012 WL 2332358, at *9 (N.Y. Sup. Ct. Kings Co. June 13, 2012) ("plaintiffs lack standing to allege a claim for breach of the [trust's] P[ooling and ]S[ervicing ]A[greement] because they are not parties to this contract, nor do they allege that they are third-party beneficiaries to the agreement") . . . .

> Here, plaintiff[] contend[s] that [his] loan[] [was] not acquired by the Defendant[s] . . . pursuant to the [Corporation Assignment Deed of Trust] because, plaintiff[] allege[s], [Defendants] did not perform all of their obligations under the [governing documents of the Trust].   [See Am. Cmplt. (Dkt. No. 16) ¶ 173 ("Plaintiff requests [in his Ninth Cause of Action] that this court declare that the [assignment] does not comply with the documents recorded by the [Trust] with the SEC, and is therefore VOID"); id. ¶ 181 ("Plaintiff requests [in his Eleventh Cause of Action] that this court declare that the [assignment] does not comply with the 'Timing Requirement' of the [Trust] Prospectus and is 'VOID.'"); id. ¶ 185 ("Plaintiff requests [in his Twelfth Cause of Action] that this court declare that the [assignment] does not convey a 'Qualified Loan' pursuant to the [Trust] Prospectus and is 'VOID.'"); id. ¶ 189 ("Plaintiff requests [in his Thirteenth Cause of Action] that this court declare that the [assignment] does convey a 'Defective Obligation' in conflict with the [Trust] Prospectus [and] is 'VOID.'").]   Although noncompliance with [the Trust's governing documents']

provisions might have made the assignment[] unenforceable at the instance of parties to those agreements, . . . plaintiff[] w[as] not [a] part[y] to those agreements.  And plaintiff[] ha[s] not shown that the entities that were parties to those agreements intended that plaintiff[] – whose financial obligations were being bought and sold – would in any way be [a] beneficiar[y] of the [Trust's governing documents].  [Accordingly] . . . plaintiff[] lack[s] standing to enforce the agreements to which [he] [is] not part[y] and of which [he] [is] not [an] intended beneficiar[y].

Id. at 86-87.  Accordingly, Plaintiff's Ninth, Eleventh, Twelfth, and Thirteenth Causes of Action

will be dismissed for lack of prudential standing.

In his Tenth Cause of Action, Plaintiff claims that the assignment of his mortgage

loan and its placement into the Trust violated the Trust's governing documents, and that

accordingly the assignment violated New York Estates, Powers and Trusts Law § 7-2.4.  See

Am. Cmplt. (Dkt. No. 16) ¶ 86.  Plaintiff "requests that this court declare that the [assignment]

does not comply with New York's Estates, Powers & Trusts Law, and is therefore 'VOID.'"  (Id.

¶ 177)

In Rajamin, the court explicitly rejected this same argument:

[Plaintiffs] rely on a New York statute that provides:  "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by . . . law, is void."  N.Y. Estates, Powers and Trusts Law ("EPTL") § 7-2.4 (McKinney 2002).  Here, the [Trust's governing documents] are the instruments creating the trust estates, and plaintiffs argue that the [governing documents] were "contravene[ed]" by the Trustee's acceptance of mortgage loans conveyed in a manner that did not comply with the procedural formalities that the [governing documents] specified, thereby rendering those conveyances void under the statute. . . .  Plaintiffs' reliance on trust law is misplaced.

First, . . . this argument depends on plaintiffs' contention that parties to the assignment agreements violated the terms of the [Trust's governing documents].  If those agreements were not breached, there is no foundation for plaintiffs' contention that any act by the trusts' trustee was unauthorized.  But as discussed above, plaintiffs, as nonparties to those contracts, lack standing to assert any nonperformance of those contracts.

Second, under New York law, only the intended beneficiary of a private trust may

enforce the terms of the trust.  See, e.g., Matter of the Estate of McManus, 47
N.Y.2d 717, 719 (1979) ("McManus") (persons who "were not beneficially
interested in the trust . . . lack[ed] standing to challenge the actions of its trustee");
Cashman v. Petrie, 14 N.Y.2d 426, 430 (1964) (mere incidental beneficiaries of a
trust "cannot maintain a suit to enforce the trust"); Naversen v. Gaillard, 38
A.D.3d 509, 509 (2d Dep't 2007) . . . .  Where the challengers to a trustee's
actions are not beneficiaries, and hence lack standing, the court "need not decide
whether the conduct of the trustee comported with the terms of the trust."
McManus, 47 N.Y.2d at 719.

Third, even if plaintiffs had standing to make an argument based on EPTL § 7-
2.4, on the theory that a mortgagor has standing to "challenge[] a mortgage
assignment as invalid, ineffective, or void," Woods v. Wells Fargo Bank, N.A.,
733 F.3d 349, 354 (1st Cir. 2013) (internal quotation marks omitted), the weight
of New York authority is contrary to plaintiffs' contention that any failure to
comply with the terms of the [Trust's governing documents] rendered defendants'
acquisition of plaintiffs' loans and mortgages void as a matter of trust law.  Under
New York law, unauthorized acts by trustees are generally subject to ratification
by the trust beneficiaries.  See King v. Talbot, 40 N.Y. 76, 90 (1869) ("[t]he rule
is perfectly well settled, that a cestui que trust is at liberty to elect to approve an
unauthorized investment, and enjoy its profits, or to reject it at his option");
Mooney v. Madden, 193 A.D.2d 933, 933-34 (3d Dep't) ("Mooney") ("A trustee
may bind the trust to an otherwise invalid act or agreement which is outside the
scope of the trustee's power when the beneficiary or beneficiaries consent or
ratify the trustee's ultra vires act or agreement. . . ."), lv. dismissed, 82 N.Y.2d
889 (1993) . . . .  Moreover, "beneficiary consent may be express or implied from
the acceptance of the trustee's act or agreement and may be given either after or
before the trustee's act. . . ." Mooney, 193 A.D.2d at 934. . . .

. . . .

Because, as the above authorities demonstrate, a trust's beneficiaries may ratify
the trustee's otherwise unauthorized act, and because "a void act is not subject to
ratification," Aronoff v. Albanese, 85 A.D.2d 3, 4 (2d Dep't 1982), such an
unauthorized act by the trustee is not void but merely voidable by the beneficiary.

. . . .

In sum, we conclude that as unauthorized acts of a trustee may be ratified by the
trust's beneficiaries, such acts are not void but voidable; and that under New York
law such acts are voidable only at the instance of a trust beneficiary or a person
acting in his behalf.  Plaintiffs here are not beneficiaries of the securitization
trusts; the beneficiaries are the certificateholders.  Plaintiffs are not even
incidental beneficiaries of the securitization trusts . . . .  The law of trusts provides
no basis for plaintiffs' claims.

Id. at 87-90.

Plaintiff presents the same argument that the Rajamin court rejected.  See Am. Cmplt. (Dkt. No. 16) ¶¶ 86, 177 (assignment is "VOID" because placement of Plaintiff's mortgage in the Trust violated the terms of the Trust's governing documents and therefore contravenes New York Estates, Powers and Trusts Law § 7-2.4).  Accordingly, for the reasons set forth in Rajamin, "[t]he law of trusts provides no basis for [P]laintiff['s] claims" here. Rajamin, 757 F.3d at 90.  Plaintiff's Tenth Cause of Action will be dismissed.

### B.     The Alleged Violation of the Internal Revenue Code Does Not Provide a Basis for Standing

In his Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, Plaintiff alleges that the assignment of the Note and Deed of Trust to the Bank was invalid because it violated various provisions of the Internal Revenue Code related to REMICs, 26 U.S.C. §§ 860A-G.  See Am. Cmplt. (Dkt. No. 16) ¶¶ 118-168.  Although "[t]he Second Circuit has never decided the question, . . . district courts in this Circuit have repeatedly held that there is no private right of action to enforce violations of the I[nternal ]R[evenue ]C[ode]."  Reynolds v. de Silva, No. 09 Civ. 9218 (CM), 2010 WL 743510, at *7 (S.D.N.Y. Feb. 24, 2010) (collecting cases), abrogated on other grounds by Katz v. Cellco Partnership, 794 F.3d 341 (2d Cir. 2015); Seabury v. City of N.Y., No. 06 Civ. 1477 (NGG), 2006 WL 1367396, at *5 (E.D.N.Y. May 18, 2006) ("Private citizens cannot enforce the provisions of the Tax Code.  That is the duty of the Secretary of the Treasury and the Commissioner of the Internal Revenue Service, who are charged with the responsibility of administering and enforcing the Tax Code, including allegations of suspected fraud.  United States v. LaSalle Nat'l Bank, 437 U.S. 298, 308 (1978). Federal courts have consistently refused to imply a private cause of action under the tax laws . . . ."); see also Suozzo v. Bergreen, No. 00 Civ. 9649 (JLK), 2003 WL 256788, at *2 (S.D.N.Y.

Feb. 5, 2003) ("defendants correctly argue that there is no private right of action for an alleged

violation of Section 401 [of the Internal Revenue Code]"); Spilky v. Helphand, No. 91 Civ. 3045

(PKL), 1993 WL 159944, at *4 (S.D.N.Y. May 11, 1993) ("there is no evidence that Congress

intended to provide a private cause of action under the Internal Revenue Code for an employee

who alleges that his employer failed to make the required withholdings and contributions").

       Moreover, courts in this District and elsewhere have held that the provisions at

issue here – 26 U.S.C. §§ 860A-G – do not create a private cause of action.  Obal, 2015 WL

631404, at *4 (borrower sought to invalidate assignment of mortgage based on violations of 26

U.S.C. §§ 860A-G; held that "[borrower] lacks prudential standing to seek a declaration that the

Assignment violates REMIC Tax Regulations"; "While no court in this Circuit appears to have

addressed the specific issue of whether private plaintiffs have a right of action for violations of

REMIC Tax Regulations, courts in other jurisdictions have found that there is no private right of

action to enforce these IRC provisions. . . .  Obal has failed to establish a private right of action

to claim for violations of REMIC Tax Regulations." (citations omitted)); Mohlman v. Long

Beach Mortg., No 12-10120, 2013 WL 490112, at *5 (E.D. Mich. Feb. 8, 2013) ("there is no

private right of action available to challenge any perceived violation of 26 U.S.C. §§ 860A-G");

Oliver v. Delta Financial Liquidating Trust, No. 12 Civ. 869 (AA), 2012 WL 3704954, at *2 n.8

(D. Or. Aug. 27, 2012) ("plaintiff's reliance on the Internal Revenue Code, 26 U.S.C. §[§] 860A-

G, is misplaced[ because] [t]his statute does not create a private right of action but rather

regulates the taxation of REMIC trusts").

       Because there is no private right of action under 26 U.S.C. §§ 860A-G, Plaintiff

lacks standing to assert that the assignment of the Note and Deed of Trust is invalid under these

provisions of the Internal Revenue Code.  Plaintiff's Second, Third, Fourth, Fifth, Sixth,

Seventh, and Eight Causes of Action will be dismissed.

### C.   Plaintiff's Other Claims Premised on the Alleged Invalidity of the Assignment Fail as a Matter of Law

Plaintiff asserts claims for (1) "cancellation of instruments" (Am. Cmplt. (Dkt. No. 16) ¶¶ 190-200 (Fourteenth Cause of Action)); (2) fraud (id. ¶¶ 201-205 (Fifteenth Cause of Action)); (3) violation of New York's Deceptive Practices Act, N.Y. Gen Bus. Law § 349 (id. ¶¶ 206-214 (Sixteenth Cause of Action)); (4) violation of the Nevada Business and Professional Code (id. ¶¶ 215-243 (Seventeenth Cause of Action)); (5) violation of the FDCPA 15 U.S.C. § 1692 et seq. (id. ¶¶ 244-260 (Eighteenth Cause of Action)); and (7) statutorily defective foreclosure (id. ¶¶ 281-310 (Twentieth Cause of Action)).  Each of these claims is premised on the argument that Defendants do not validly hold the Note and Deed of Trust for the Mortgaged Premises.  See id. ¶ 196 (with respect to "cancellation of instruments" claim, Plaintiff alleges that "since the loan was neither properly transferred nor transferred in a timely manner to the Trust, Defendants have no legal authority to foreclose and the assignments are void ab initio"); id. ¶¶ 203-204 (with respect to fraud claim, Plaintiff alleges that "at the time that Plaintiff was induced to engage in the conduct alleged herein . . . Plaintiff was led to believe that the [assignment] w[as] true and valid. . . .  When Defendants . . . represent[ed] [that they validly held Plaintiff's mortgage], . . . . [they] took affirmative steps to conceal the true facts from Plaintiff:  namely that no Defendant has the right to foreclose."); id. ¶ 210 (with respect to New York Deceptive Practices Act claim, Plaintiff alleges that "Defendants demanded and accepted payments for debts that were non-existent," because Defendants lack a valid interest in the Note and Deed of Trust); id. ¶¶ 230-231 (with respect to Nevada Business and Professional Code claim, Plaintiff alleges that the "loan was not properly transferred to Defendants . . . .  Defendants do not have a perfected security interest in Plaintiff's loan such that they can enforce Plaintiff's obligation.");

16

id. ¶¶ 248, 251 (with respect to FDCPA claim, Plaintiff alleges that "Defendants attempted to collect on the Note under false pretenses, namely that [the Bank] was assigned Plaintiff's debt when in fact [it was] not"; "Plaintiff's loan was not properly transferred to [the Bank], [which] seeks to cause their purported authorized agent(s) to collect mortgage payments and engage in other unlawful [debt] collection practices."); id. ¶¶ 287-292 (with respect to statutorily defective foreclosure claim, Plaintiff alleges that Defendants' "action is improper because they own no beneficial interest in the collateral . . . and have unlawfully commenced the foreclosure process based on purported transfers, assignments and endorsements of the Note and Deed of Trust to which the Defendants claim the beneficial rights and interests. . . . Defendants' claimed interest is false" because assignment was invalid.).

Plaintiff concedes that each of these causes of action depends on a finding that the assignment was void.  See id. ¶ 8 ("[I]f the assignment is void, then it has clouded the title to Plaintiff's property and impaired his ability to identify and negotiate with the true and correct beneficiary of his loan.  In addition, Plaintiff has been paying the wrong parties.  Furthermore, a VOID assignment would mean that the Defendants have also engaged in deceptive and misleading business practices as well as having created an unfair business advantage over Plaintiff . . . ."); id. ¶ 311 ("if the Court declares that the [assignment] is VOID, Defendants have committed fraud and deceit violating New York General Business Law . . . ; Nevada Business and Professional Code . . . ; 15 U.S.C. § 1692 . . . ; 15 U.S.C. § 1641([g]); and Nevada Revised Statutes requiring the cancellation of instruments and the ruling that the foreclosure is Statutorily Defective").

As explained above, however, Plaintiff lacks standing – under the Trust's governing documents, New York trust law, or the Internal Revenue Code – to challenge the

validity of the assignment.  Because (1) each of Plaintiff's claims in Causes of Action 14-18 and

20 is predicated on the alleged invalidity of the assignment, and (2) Plaintiff has no basis to

challenge the validity of the assignment, each of these claims fails as a matter of law.  See

Rajamin, 757 F.3d at 87-88 ("[Plaintiffs'] argument depends on plaintiffs' contention that parties

to the assignment agreement violated the terms of the [trusts' governing documents].  If those

agreements were not breached, there is no foundation for plaintiffs' contention that any act by

the trusts' trustee was unauthorized.  But as discussed above, plaintiffs . . . lack standing to assert

any nonperformance of those contracts," warranting dismissal of claims premised on such

nonperformance.).  Accordingly, Plaintiff's Fourteenth, Fifteenth, Sixteenth, Seventeenth,

Eighteenth, and Twentieth Causes of Action will be dismissed.

### D.    Plaintiff's Claim Under the Truth In Lending Act Is Barred by the Statute of Limitations

The Amended Complaint's Nineteenth Cause of Action pleads a claim under the

Truth in Lending Act.  Plaintiff asserts that even if the Bank validly holds the Note and Deed of

Trust, "[it] was still required to follow the provisions of [the] TILA as the purported new

creditor."  (Am. Cmplt. (Dkt. No. 16) ¶ 270)  The TILA "generally requires a lender who takes

ownership of an existing loan, through sale, assignment or other transfer, to notify the borrower

[of this development] within thirty days."  Obal, 2015 WL 631404, at *9; see 15 U.S.C. §

1641(g).  Here, Plaintiff alleges that the purported assignment of the Note and Deed of Trust

occurred on August 15, 2011.  See Am. Cmplt. (Dkt. No. 16) ¶ 52; id. Ex. 2.  The "statute of

limitations for causes of action brought under [the] TILA . . . is one year from the date of the

alleged violation."  Obal, 2015 WL 631404, at *10 (citing 15 U.S.C. § 1640(e) ("any action

under this section may be brought in any United States district court, or in any other court of

competent jurisdiction, within one year from the date of the occurrence of the violation . . . .")).

Accepting Plaintiff's allegation that the Bank "did not provide Plaintiff with written notice within 30 days after the date on which [the Bank was] allegedly assigned the mortgage" (Am. Cmplt. (Dkt. No. 16) ¶ 274), this violation of the TILA occurred on or about September 15, 2011 – 30 days after the purported assignment was recorded. See Am. Cmplt. (Dkt. No. 16) ¶ 52. Accordingly, the statute of limitations on Plaintiff's TILA claim expired on September 15, 2012 – nearly two years before Plaintiff filed the Complaint.[4] See Cmplt. (Dkt. No. 2); Obal, 2015 WL 631404, at *10 ("Even if the March 27, 2012 recording date of the Assignment was the date of transfer of ownership, that date is still two years prior to Obal's Complaint. Th[e] [TILA] claim is time-barred.").[5]

---

[4] Plaintiff asserts that he "could not have reasonably known of the existence of a TILA violation because Defendants fraudulently concealed the fact that they were purportedly assigned the interest in Plaintiff's Note and Deed of Trust." (Am. Cmplt. (Dkt. No. 16) ¶ 279) The assertion that Defendants fraudulently concealed the assignment is not supported by well-pled factual allegations, and therefore will not be accepted as true. See Harris, 572 F.3d at 72 ("[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]."). "A plaintiff seeking to toll the applicable statute of limitations [on grounds of fraud] must meet the particularity standard of Rule 9(b)." S.E.C. v. Wyly, 788 F. Supp. 2d 92, 104 (S.D.N.Y. 2011) (quotation marks and alterations omitted). Plaintiff's conclusory allegation of fraudulent concealment falls far short of this standard. Moreover, the fact that the assignment was publicly recorded in the Clark County, Nevada recorder's office (Am. Cmplt. (Dkt. No. 16) Ex. 2) further undermines Plaintiff's claim of fraudulent concealment. See Wyly, 788 F. Supp. 2d at 104 ("To invoke fraudulent concealment, a plaintiff must allege that (1) defendant concealed the cause of action; (2) plaintiff did not discover the cause of action until some point within five years of commencing the action; and (3) plaintiff's continuing ignorance was not attributable to lack of diligence on its part. . . . To establish the first element, a plaintiff must allege that: (1) defendant took affirmative steps to prevent or frustrate discovery of the alleged violation by depriving plaintiff of the information it needed to pursue its claims in a timely fashion; or (2) the alleged wrong was self-concealing." (footnotes omitted)). Given that the assignment was publicly recorded, any claim that Defendants actively "depriv[ed] plaintiff of the information [he] needed to pursue [his] claim . . . or [that] . . . the alleged wrong was self-concealing," id., is not persuasive. Accordingly, there is no basis for this Court to find that the statute of limitations on Plaintiff's TILA claim was tolled because of Defendants' fraud.

[5] The Amended Complaint's First Cause of Action seeks a declaratory judgment that the Bank "does not have a secured or unsecured legal, equitable, or pecuniary interest in the Plaintiff's

E.      **LEAVE TO AMEND**

District courts "ha[ve] broad discretion in determining whether to grant leave to

amend . . . ." Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000). Leave to amend may

properly be denied in cases of "'undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

etc.'" Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371

U.S. 178, 182 (1962)); see also Murdaugh v. City of N.Y., No. 10 Civ. 7218 (HB), 2011 WL

1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of

Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be

granted where the proposed amendment is futile.") (citations omitted). "'A pro se complaint is

to be read liberally,'" however, and a "'court should not dismiss without granting leave to amend

---

loan . . . ." (Am. Cmplt. (Dkt. No. 16) ¶ 110) Plaintiff alleges that the Bank holds no interest in
his loan because "the Deed of Trust was never transferred" to it. (Id.) It is not clear from the
Amended Complaint whether Plaintiff is arguing (1) that the assignment of his loan never, in
fact, occurred, or (2) that the assignment occurred but is invalid. To the extent Plaintiff's
argument is premised on the invalidity of the assignment under the Trust's governing documents,
New York trust law, or the Internal Revenue Code, this claim will be dismissed for the reasons
discussed above in connection with Causes of Action 14-18 and 20. To the extent Plaintiff
argues that the assignment never, in fact, occurred, this claim is contradicted by the Amended
Complaint and its exhibits. Plaintiff has not disputed that on August 15, 2011, the assignment of
the Note and Deed of Trust with respect to the Mortgaged Premises was recorded in the Clark
County, Nevada recorder's office (see id. ¶¶ 52, 70); indeed, he has attached the Corporation
Assignment Deed of Trust to the Amended Complaint. (Id. Ex. 2 (Corporation Assignment
Deed of Trust)) The Corporation Assignment Deed of Trust states that "THE BANK OF NEW
YORK [has received] ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF
TRUST DATED 05/26/2007, EXECUTED BY: FRANCK LE BOUTEILLER . . . ." (Id.)
Plaintiff has not alleged that the Corporation Assignment Deed of Trust is a forgery. Moreover,
Plaintiff has not pled facts demonstrating that the Deed of Trust was not assigned to the Bank.
See Rajamin, 757 F.3d at 90 ("[P]laintiff's voidness contention rests on the supposition that the
mortgage assignment agreements did not purport to assign any mortgages – or, indeed, any
related interests – a supposition that is entirely implausible."). Accordingly, the Amended
Complaint's First Cause of Action will be dismissed.

at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).

Here, Plaintiff filed the Amended Complaint in response to Defendants' motion to dismiss the Complaint. (Dkt. No. 16)  Defendants' first motion to dismiss makes the same arguments addressed here. See Def. Br. (Dkt. No. 11).  In filing the Amended Complaint, however, Plaintiff did not remedy any of the deficiencies Defendants had identified in their first motion to dismiss.  Indeed, Plaintiff's lack of standing and inability to challenge the assignment are fatal to his claims.  These are not deficiencies that can be remedied through supplemental pleading.  The same is true as to Plaintiff's Truth in Lending Act claim, which is barred by the applicable statute of limitations.  Accordingly, any amendment would be futile, and Plaintiff's claims will be dismissed without leave to amend.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 28) is granted.  The Clerk of the Court is directed to terminate the motion, to enter judgment for the Defendants, and to close this case.[6]  Any pending motions are moot.  Accordingly, the Clerk is

---

[6] The Amended Complaint also names Recontrust Company N.A. as a defendant.  The docket does not reflect service on Recontrust, however, and Recontrust has not appeared in this action.  Moreover, the Amended Complaint contains no allegations concerning Recontrust.  "'[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'"  Reyes v. City of New York, 992 F. Supp. 2d 290, 300 (S.D.N.Y. 2014) (quoting McCoy v. Goord, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003)).  Under the circumstances here, this Court will sua sponte dismiss the claims against Recontrust.  Plaintiff has never served Recontrust and, even if service had been effected, the rulings in this opinion would apply with equal force to Recontrust.  See Perez v. Ortiz, 849 F.2d 793, 797 (2d Cir. 1988) (sua sponte dismissal "may be appropriate in some circumstances . . . , particularly in cases involving frivolous in forma pauperis complaints"); Beck v. City of New York, No. 12 Civ. 9231 (RA), 2014 WL 80544, at *1 n.2 (S.D.N.Y. Jan. 3, 2014) ("The docket indicates that

directed to likewise terminate Dkt. No. 9.  The Clerk is further directed to mail a certified copy

of this Order to pro se Plaintiff Franck Le Bouteiller at 17 Desert Palm Drive, Las Vegas, NV

89183.

Dated: New York, New York                    SO ORDERED.
       September 11, 2015

                                             _Paul S Gardephe_____
                                             Paul G. Gardephe
                                             United States District Judge

---

Defendant Stephen Collier has not yet been served with a summons and complaint, and he has
therefore not moved to dismiss the complaint. . . .  Because the Court's rulings in this Order
would apply equally to the Defendant identified as Collier . . . , the Court dismisses the claims
against him sua sponte."); McLennon v. New York City, No. 13 Civ. 128 (KAM), 2015 WL
1475819, at *3 n.9 (E.D.N.Y. Mar. 31, 2015) (where "the remaining individuals defendants
named in the Amended Complaint have not been served," dismissing "plaintiffs' . . . claims for
failure to state a claim as to the non-moving and unserved defendants sua sponte").